IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| DOYLE LEE HAMM, | Civil Action No. |
| | 2:17-cv-02083-KOB |
| Plaintiff, | |
| v. | **EXECUTION SCHEDULED** |
| | |
| JEFFERSON S. DUNN, Commissioner, | **Thursday, February 22, 2018** |
| Alabama Department of Corrections, et al., | |
| | |
| Defendants. | |

**DOYLE HAMM'S REPLY
TO DEFENDANTS' OBJECTIONS TO DOYLE HAMM'S LIST OF EXHIBITS**

Doyle Lee Hamm hereby provides a reply to Defendants' objection to certain exhibits listed in Doyle Hamm's exhibit disclosures (Doc. 24). In support, Doyle Hamm states the following:

**Evidentiary Standard**

As an initial matter, there are different evidentiary standards for evidence presented for purposes of a pre-trial ruling, such as a ruling on a summary judgment motion, and for evidence admitted during trial. The general rule in the Eleventh Circuit is that, for purposes of a summary judgment ruling, parties' evidence can be considered so long as it can be reduced to an admissible form at trial. *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form."). This is true for purposes of both hearsay and authentication. *See Jones v.*

1

*UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form.") (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)); *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp. 2d 1322, 1327 n.2 (S.D. Ala. 2003) (documents need not be properly authenticated to be considered at summary judgment where it is apparent that they can be reduced to admissible, authenticated form at trial).

In evaluating the admissibility of Doyle Hamm's exhibits, then, this Court must determine whether, if currently inadmissible, the exhibits could be reduced to an admissible form at trial. Only if the exhibits are both inadmissible in their current form *and* not capable of being reduced to an admissible form at trial may this Court refuse to evaluate Doyle Hamm's evidence.

### Exhibit 35

Plaintiff's Exhibit 35, entitled "Public Assessment Report of the Medicines Evaluation Board in the Netherlands," dated December 22, 2009, Doc. 24-40, is admissible. Defendants assert three reasons why Exhibit 35 is inadmissible and each fails.

First, Exhibit 35 does not violate Rule 802 because it does not constitute inadmissible hearsay. The report contained in Exhibit 35 represents findings from the Medicines Evaluation Board (MEB) in the Netherlands regarding the benefits and risks of midazolam, apparently the first drug in Alabama's lethal injection protocol. This report falls into several possible hearsay exceptions. First, it falls within the Public Records exception under Rule 803(8) because it represents factual findings from a legally authorized investigation. *See* Fed. R. Evid. 803(8)(A)(iii). The MEB is an "independent authority that regulates the quality, efficacy, and

safety of medicines, and encourages better use of medicines for the right patient."[1] As cited on the first page of the report itself, the MEB appears to have authority to grant marketing authorization for drugs under Directive 2001/83/EC. The report also has no signs of lack of trustworthiness, as it comes from a legitimate state-approved medical board. As such, the report contained in Exhibit 35 fits squarely in the Public Records hearsay exception.

Alternatively, Exhibit 35 fits within the Market Reports and Similar Commercial Publications hearsay exception under Rule 803(17). It can be fairly described as a "compilation" that is generally relied upon by the public and/or medical professionals to assess the safety of drugs like midazolam.

Lastly, even if Exhibit 35 does not fit squarely within either of these exceptions, it falls within the Residual Hearsay Exception of Rule 807. The statements in the report are reliable, offered as evidence of a material fact (the shelf-life of midazolam), is more probative than other evidence that the plaintiff sought through reasonable efforts, and admitting the statement will serve the interests of justice by requiring the defendants to be transparent and accountable to their protocol.

Defendants' second argument also fails because Exhibit 35 is certainly relevant and in compliance with Rules 401 and 402. The evidence in Exhibit 35 has a tendency to prove that the midazolam in the Defendants' possession (1) has expired or, alternatively, (2) has been procured in violation of Akorn's explicit policy that its drugs are not to be used purposes of lethal

---

[1] *See* Medicines Evaluation Board, "About MEB," https://english.cbg-meb.nl/. Moreover, the MEB has been referred to as the "Dutch Regulatory Authority" and is a key player in the European medical field. *See* Mary Smillie, "Data Exclusivity and Definition of a New Active Substance," (April 23, 2010) https://www.twobirds.com/en/news/articles/2012/data-exclusivity-definition-new-active-substance. The MEB consists of a chairperson and between 9 and 17 other members, composed of doctors, pharmacists, and scientists. *See*, Medicines Evaluation Board, https://english.cbg-meb.nl/about-meb/meb.

injection. Upon information and belief, ADOC purchased midazolam in 2015, the same year that Akorn changed its policies to prohibit the use of midazolam for executions. Exhibit 35 states that the drug's shelf life is 24 months, therefore making it more likely that the drugs in ADOC's possession now in 2018 are either expired or have been procured in violation of Akorn's policies. This is highly relevant to defendants' assertions about the availability of lethal drugs, especially those that Doyle Hamm is proposing as an alternative means of execution.

Whether ADOC's drugs have expired is of consequence to this litigation, as required by Rule 402(b). If the midazolam in ADOC's possession was purchased since 2015, it is likely that it has done so in violation of the policies of Akorn and several other pharmaceutical companies. This would have a tendency to show that ADOC will be able to obtain the alternative drugs that Doyle Hamm proffers in his complaint as a viable alternative to ADOC's current intravenous lethal injection protocol.

The third argument that Defendants raise also fails because Exhibit 35 has been properly authenticated. Importantly, it is irrelevant whether Doyle Hamm has actually presented authenticating evidence as of today. As long as he can prove that the evidence can be authenticated for purposes of trial, then the evidence should be admitted on summary judgment. *See Davis v. Housing Authority of the Birmingham Dist.*, 2015 WL 1487199 (N.D. Ala. 2015). Moreover, Rule 901 does not specify exactly how a piece of evidence must be authenticated. The only requirement is that there is "evidence sufficient to support a finding that the matter is what the proponent claims it to be." *Bury v. Marietta Dodge*, 692 F.2d 1335, 1339 (11th Cir. 1982). In any event, Exhibit 35 has been authenticated by the Distinctive Characteristics allowance of Rule 901(b)(4). The report's appearance, contents, substance, patterns, and other distinctive characteristics validate its authenticity. There is little question that this report was produced by

the MEB and that it has not been altered; indeed, Defendants do not produce any evidence that the report is inauthentic in this regard. Moreover, the characteristics of the report, including the EU procedure number, registration number, and initials of the Board (MEB), establish reliability of this report. Furthermore, the report does not need external authentication evidence because it is self-authenticated under Rule 902. The report fits within the Official Publications exception of Rule 902(5), as it is an "other publication" purported to be issued by a public authority.

### Exhibits 39 and 40

Exhibits 39 and 40, printouts from two articles published in *New Republic* are admissible, despite the defendants' objections.

In terms of relevance, the articles are extremely relevant insofar as they demonstrate the risk of serious injury in the case of poor venous access. The photos in the articles are the most direct evidence of the serious risk of harm in this case.

The defendants' objections are not valid. First, the articles are not inadmissible hearsay. Alabama case law has permitted newspaper articles to be used in summary judgment rulings, even if the articles cannot be reduced to an admissible form at trial. In *Davis v. Housing Authority of the Birmingham Dist.*, this Court explicitly held that "[N]ews articles may be considered on summary judgment even if the news articles could not reduced to admissible form at trial." 2015 WL 1487199 (N.D. Ala. 2015) (citing *Church of Scientology Flag Serv. Org. v. City of Clearwater*, 2 F.3d 1514 (11th Cir. 1993)).

Moreover, the articles are admissible because they can be reduced to an admissible form at trial. Defendants assert that Exhibits 39 and 40 should not be admitted because they contain, respectively, an unverified account of what happened during a 2006 execution, and quotations

from other accounts. These gaps can be filled by testimony and the introduction of verification evidence at trial. This is not a reason to reject these exhibits at the summary judgment stage.

Alternatively, Exhibits 39 and 40 should be admitted under the Residual Hearsay Exception of Rule 807. This Court should construe the statements made in the articles as reliable because they are contained in a well-known, legitimate periodical, based on eyewitness accounts and credible reports of the events, and they have been fact checked. The exhibits are also offered as evidence of a material fact, namely that the risk of a botched execution in situations in which an inmate has compromised veins is significant. The evidence is as probative on this point as other evidence that counsel could obtain through reasonable efforts for this summary judgment hearing, and admitting the evidence will serve the interests of justice.

Exhibits 39 and 40 are also relevant, in compliance with Rules 401 and 402. These articles have a tendency to prove the problems with and possibility of a botched lethal injection in situations that are largely identical to Doyle Hamm's circumstances. The articles tend to show whether the claims made in Doyle Hamm's complaint are probable, given that similar problems have occurred before recently. Moreover, the similarities and differences between Alabama's protocol and Ohio's protocol are irrelevant for the purposes of this article – the purpose is to analogize between the factual situations, not to argue the merits and problems of Ohio's protocol.

Lastly, even if the claims contained in Exhibits 39 and 40 are unverified, as defendants argue, this Court has held that such a critique is relevant only for evaluating the weight of the evidence, *not* admissibility. *See Davis v. Housing Authority of the Birmingham Dist.*, 2015 WL 1487199 (N.D. Ala. 2015) ("[T]o the extent that the article presents 'conclusory, speculative and/or opinion evidence,' those critiques go to the weight of the evidence rather than

admissibility and are not sufficient justifications to strike the article."). Therefore, this Court should admit the articles and evaluate their weight accordingly.

### Exhibits 43 and 44

Exhibits 43 and 44 should be admitted because they establish and corroborate relevant, material facts. Exhibit 43, the Affidavit of Egon Von Conway, is relevant and in compliance with Rules 401 and 402 because it summarizes and corroborates Doyle Hamm's extensive medical history. Doyle Hamm's entire medical record is relevant because it has implications for the condition of his veins now, and places this particular problem in the context of his deteriorating and complicated physical conditions. Exhibit 43 details Doyle Hamm's longtime drug use, brain damage, seizure disorder, and impaired intellectual functioning, all of which are relevant to the effect that a lethal injection will have on him. Moreover, Exhibit 43 summarizes and condenses hundreds of pages of medical records, providing a helpful guide to the Court.

Undersigned counsel has compiled the actual records on which this affidavit is based, and if those will be admitted, Doyle Hamm will withdraw this affidavit.

Exhibit 44, the Affidavit of Nicola Cohen, is also relevant because it has a tendency to show that Doyle Hamm's counsel has been prevented from being fully apprised of his client's health and wellbeing, despite repeated attempts to view his client's medical records. Moreover, there is a pattern for delay in providing counsel for Doyle Hamm these medical records. Previous to this request, counsel received medical records in July 2017, but only after first requesting them in January of that year. To date, he has still not received his client's medical records from the entirety of 2017. Defendants place delays always on the shoulders of Doyle Hamm, but this affidavit shows that he is not responsible for these delays.

For all of the above reasons, these identified exhibits should be admitted.

Respectfully submitted,

*/s/ Bernard E. Harcourt*

Bernard E. Harcourt
Bar Number: ASB-4316-A31B
Attorney for Plaintiff Doyle Hamm
COLUMBIA LAW SCHOOL
435 West 116th Street
New York, New York 10027
Telephone: (212) 854-1997
Fax: (212) 854-7946
Email: beh2139@columbia.edu

Dated: January 31, 2018

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following: Assistant Attorneys General Thomas Govan and Beth Jackson Hughes at tgovan@ago.state.al.us and bhughes@ago.state.al.us, as well as to the Docket Clerk of the Capital Litigation Division of the Office of the Alabama Attorney General, Courtney Cramer at ccramer@ago.state.al.us.

BERNARD E. HARCOURT
*Counsel of Record*