**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DOYLE LEE HAMM,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **JEFFERSON S DUNN, COMMISSIONER,** | ] | |
| **ALABAMA DEPARTMENT OF** | ] | |
| **CORRECTIONS;** | ] | **2:17-cv-02083-KOB** |
| **CYNTHIA STEWART, WARDEN,** | ] | |
| **HOLMAN CORRECTIONAL FACILITY;** | ] | |
| **LEON BOLLING, III, WARDEN,** | ] | |
| **DONALDSON CORRECTIONAL FACILITY;** | ] | |
| **OTHER UNKNOWN EMPLOYEES AND** | ] | |
| **AGENTS, ALABAMA DEPARTMENT OF** | ] | |
| **CORRECTIONS** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Doyle Hamm challenges the constitutionality of Alabama's method of execution, not

generally, but as applied to him.  (Doc. 15 at 1–2).  As the Supreme Court of the United States

has repeatedly said, "because it is settled that capital punishment is constitutional, it necessarily

follows that there must be a constitutional means of carrying it out."  *Glossip v. Gross*, 135 S. Ct.

2726, 2732 (2015) (quotation marks omitted).  But the Eighth Amendment forbids cruel and

unusual punishment, creating tension between imposing a constitutional death sentence and

carrying out the death sentence in a constitutional manner.

In this country, the chosen method of execution has evolved as social mores have

changed.  *See Baze v. Rees*, 553 U.S. 35, 40–41 (2008) (plurality opinion) ("As is true with

respect to each of [the thirty-five States that impose capital punishment] and the Federal

Government, Kentucky has altered its method of execution over time to more humane means of

carrying out the sentence. That progress has led to the use of lethal injection by every jurisdiction that imposes the death penalty."). Today, death penalty advocates view lethal injection, the most prevalent method of capital punishment, as a more humane means of execution than its predecessors. *See id.*

Mr. Hamm contends that, as applied to him, Alabama's method of execution—intravenous lethal injection—crosses the line from a constitutional method of fulfilling his death sentence to one that would cause undue and exceptional pain and suffering. He asserts that his current medical condition, caused by years of intravenous drug use, hepatitis C, and untreated lymphoma, renders his veins severely compromised; he contends that he does not have peripheral veins suitable to handle the size of intravenous catheter required to properly administer the lethal drugs. If his current medical condition includes compromised peripheral veins, lymphoma untreated for three years, and lymphadenopathy, as he and his medical experts believe to be true, attempts to insert the intravenous catheter would subject him to unlimited and repeated needle sticks; the injection of fluid could "blow out" his veins with infiltration of drugs into the surrounding tissue; and efforts to place a central line could be hindered by enlarged lymph nodes creating a higher *risk* of puncturing a central artery—all resulting in severe and unnecessary pain.

To avoid such a gruesome scenario, Mr. Hamm suggests an alternative method of lethal injection: an "oral injection" of death-causing drug or drugs. He seeks not a total injunction prohibiting his execution, but an injunction of execution by intravenous injection.

Defendants, who control Mr. Hamm's access to medical treatment and evaluation, argue that Mr. Hamm has not presented any medical *proof* that his condition has deteriorated as he

asserts.  Further, they argue that he has not proven that his proposed alternative method of execution is appropriate or available.  As a result, they seek summary judgment.

Too many unanswered questions in the current record preclude a determination of the issues before the court.  The heart of this case centers on Mr. Hamm's current medical status, particularly the condition of his peripheral veins, lymphoma, and potential lymphadenopathy.  Because Defendants control his access to medical care, Mr. Hamm cannot be faulted for being unable to present a definitive evaluation to the court.  Without knowledge of his current medical condition, the court cannot answer the many questions raised by Mr. Hamm's request for an injunction or by Defendants' motion for summary judgment.

The looming February 22, 2018, execution date leaves insufficient time to resolve these unknowns.  But Mr. Hamm has provided enough evidence to create genuine issues of material fact about his as-applied claim.  As a result, based on the record as it currently exists, Mr. Hamm has shown a substantial likelihood of success on the merits, and the court finds that the execution date must be stayed pending an independent medical examination of Mr. Hamm.

After allowing testimony and argument at a January 31, 2018 hearing, the court announced its decisions: (1) to deny summary judgment as to Defendants' timeliness challenge of Mr. Hamm's as-applied claim because genuine issues of material fact exist about when his cause of action accrued; (2) to deny Defendants' motion for summary judgment as to the merits of Mr. Hamm's as-applied claim; (3) to deny as premature Defendants' motion for summary judgment as to the merits of Mr. Hamm's other Eighth Amendment claim; and (4) to grant a temporary and limited stay of execution.  The court now memorializes those rulings in a written opinion and order.

First, the court WILL DENY Defendants' motion for summary judgment as to the timeliness of Mr. Hamm's as-applied claim. The court finds that genuine issues of material fact exist about whether and when Mr. Hamm's medical condition worsened to a degree that gave rise to his as-applied challenge to Alabama's method of execution, triggering Alabama's two-year statute of limitations. The court also finds that the equitable doctrine of laches does not bar Mr. Hamm's complaint because he reasonably sought relief in the Alabama Supreme Court before filing his federal lawsuit.

Second, the court WILL DENY Defendants' motion for summary judgment as to the merits of Mr. Hamm's as-applied claim because he has created genuine issues of material fact about whether Alabama's method of execution is sure or very likely to cause him needless suffering and whether a feasible, readily implemented alternative method of execution exists that would significantly reduce a substantial risk of severe pain.

Third, the court WILL DENY AS PREMATURE Defendants' motion for summary judgment as to the merits of Mr. Hamm's other Eighth Amendment claim because the parties have not yet had an opportunity to engage in discovery about that claim.

Fourth, the court RESERVES RULING on Mr. Hamm's request for a preliminary injunction enjoining Defendants from executing him by intravenous injection, because the record is too sparse for the court to decide whether, as applied to Mr. Hamm, execution by intravenous injection would violate his right to be free from cruel and unusual punishment. But the court WILL STAY the execution for the purpose of obtaining an independent medical examination and opinion concerning the current state of Mr. Hamm's lymphoma, the number and quality of peripheral venous access, and whether any lymphadenopathy would affect efforts to obtain

central line access.  The results of that examination will determine whether the stay should be extended for discovery on other issues raised by Mr. Hamm's amended complaint.

## I.    PROCEDURAL HISTORY

This matter is before the court on Plaintiff's request for a preliminary injunction (doc. 15 at 44) and Defendants' renewed motion for summary judgment (doc. 16).

In 1987, Mr. Hamm was convicted in Alabama of robbery-murder and sentenced to death.  *See Hamm v. Comm'r, Ala. Dep't of Corr.*, 620 F. App'x 752 (11th Cir. 2015).  In 1990, the Alabama Supreme Court affirmed his conviction and sentence, *Ex parte Hamm*, 564 So. 2d 469 (Ala. 1990), and the United States Supreme Court denied certiorari.  *Hamm v. Alabama*, 498 U.S. 1008 (1990).  After exhausting his state collateral attacks in 2005, Mr. Hamm sought federal habeas relief.  *Hamm*, 620 F. App'x at 756–58.  In 2013, this court denied him habeas relief, and in 2015, the Eleventh Circuit affirmed.  *Id.* at 758–59.  On October 3, 2016, the United States Supreme Court denied certiorari.  *Hamm v. Allen*, 137 S. Ct. 39 (2016).

On June 23, 2017, the State moved the Alabama Supreme Court to set Mr. Hamm's execution date.  (Doc. 12-1).  On August 8, 2017, on the Alabama Supreme Court's order, Mr. Hamm filed an answer requesting that the court allow Dr. Mark Heath to examine Mr. Hamm before deciding the State's motion to set an execution date.  (Doc. 12-2).  Dr. Heath completed that examination on September 23, 2017, and on December 13, 2017, the Alabama Supreme Court entered an order setting Mr. Hamm's execution for February 22, 2018.  (Doc. 15-1 at 2; Doc. 14-17).  On the same day that the Alabama Supreme Court entered that order—December 13, 2017—Mr. Hamm filed his initial § 1983 complaint.  (Doc. 1).

Because Mr. Hamm's complaint contained a request for preliminary injunctive relief, the court immediately set a hearing.  (Doc. 3).  Before that hearing, Defendants filed a motion to

dismiss or, in the alternative, for summary judgment on Mr. Hamm's complaint. (Doc. 12). The court construed the entire motion as one for summary judgment and notified Mr. Hamm of the need to submit evidence in opposition to that motion. (Doc. 13). Mr. Hamm filed a response *and* an amended complaint, which reiterated his as-applied challenge and raised an Eighth Amendment challenge to his treatment during his time on death row. (Doc. 15). Defendants renewed their motion for summary judgment, and the parties completed briefing and the submission of evidence on an expedited schedule. (Docs. 16, 17).

## II.     BACKGROUND FACTS

### 1.  Medical Terminology

Before discussing the disputed and undisputed facts, the court must set out some medical terms. Under Alabama's lethal injection protocol, lethal injection is performed by "peripheral venous access" or, if peripheral venous access is not possible, by "central line placement." Peripheral venous access requires insertion of a catheter into one of the peripheral veins in the arms, hands, legs, or feet. Central line placement is insertion of a catheter into the jugular vein in the neck, the subclavian vein near the clavicle, or the femoral vein in the groin. According to Dr. Heath, the anesthesiologist who testified on Mr. Hamm's behalf, to obtain a central line, the practitioner must apply local anesthesia; insert a small needle into the vein; thread a wire through the needle into the vein; withdraw the needle while leaving the wire in place; cut a small opening, large enough to allow the catheter to enter the body, in the patient's flesh near the entry place for the wire; thread the catheter along the wire and into the vein; withdraw the wire; and suture the skin closed over the catheter. In the absence of an emergency, the practitioner should use an ultrasound to monitor the placement of the needle, the wire, and the catheter.

Another set of important medical terms is lymphoma and lymphadenopathy.  Lymphoma is a blood cancer, and lymphadenopathy is enlargement of lymph nodes.  A number of things can cause lymphadenopathy, including lymphoma and "less common illnesses."  *Lymphadenopathy*, Taber's Medical Dictionary Online, *https://www.tabers.com/tabersonline/view/Tabers-Dictionary/768963/all/lymphadenopathy?q=lymphadenopathy*; (Doc. 15-1 at 4).  Dr. Heath attests that lymphoma is a progressive disease, meaning that a past diagnosis of lymphoma can indicate "significant involvement and enlargement of lymph nodes in other areas of [Mr. Hamm's] body, including his neck, chest, and groin."  (Doc. 15-1 at 4).  According to Dr. Heath's testimony, lymphadenopathy can greatly complicate central line access because the largest clusters of lymph nodes are located around the jugular, femoral, and subclavian veins.  Swelling of those lymph nodes can distort the tissues surrounding the veins, making accessing those veins more difficult.

2.  Alabama's Lethal Injection Protocol

Alabama's confidential, sealed lethal injection protocol provides that, as soon as possible after arrival at Holman Correctional Facility, where all Alabama executions occur, a physician will make an assessment of the inmate's vein structure.  An IV team will also view the inmate's veins before the execution.  Aside from non-medical staff, two trained medical professionals, usually Emergency Medical Technicians ("EMTs"), and, as needed, one physician, are part of the IV team.

On the day of the execution, two IV lines will be placed in the inmate's veins.  If the IV team cannot access peripheral veins, medical personnel will use a central line to obtain intravenous access.  After two team members check the IV lines, one leaves the execution chamber and gives the Warden a signal to proceed; one team member remains in the chamber at

the inmate's left side. The Warden administers the lethal injection solution from another room. The solution consists of midazolam hydrochloride, two other drugs, and saline, administered sequentially.

The lethal injection protocol describes the process by which the remaining IV team member—who is not one of the trained medical professionals—can check whether the inmate is conscious after the Warden has started administering the midazolam hydrochloride. But the protocol does not describe how long the IV team may attempt to obtain peripheral access, how many times the team may attempt peripheral venous access, how the team determines if peripheral access is unobtainable, or what sort of medical equipment or medical specialist is available in the event the team must attempt to obtain a central line.

3. Mr. Hamm's Medical History

No one disputes that Mr. Hamm has a long and complicated medical history, which includes intravenous drug use, hepatitis C, and a 2014 diagnosis of B-cell lymphoma with a tumor behind Mr. Hamm's left eye. And no one disputes that Mr. Hamm's history of intravenous drug use complicates the accessibility of his peripheral veins. Instead, the essential factual disputes in this case revolve around (1) whether, despite the undisputed inaccessibility of *many* peripheral veins, Mr. Hamm still has enough good quality peripheral veins for the State to execute him using the procedures described in its confidential lethal injection protocol; (2) when, if ever, Mr. Hamm's lymphoma went into remission; (3) whether Mr. Hamm is currently experiencing lymphadenopathy; and (4) when, if at all, the condition of Mr. Hamm's veins worsened to an extent to give rise to his as-applied challenge.

In April 2014, a doctor conducted a CT scan of Mr. Hamm's abdomen and found "[n]o pathologically enlarged lymph nodes." (Doc. 14-4 at 18). But a May 2014 report from another

doctor reported "numerous abnormal lymph nodes" in Mr. Hamm's chest.  (Doc. 14-3 at 6).  The physician noted, however, that "[t]here [were] no palpable nodes in the cervical, supraclavicular [above the clavicle], axillary [armpit], or inguinal [groin] areas."  (*Id.* at 7).  The court notes that a lack of palpable lymph nodes does not prove a lack of lymphadenopathy; Dr. Heath testified that lymphadenopathy can occur internally in areas that a physician would not be able to feel by palpation.

Although physicians noted potential lymph node issues in those 2014 reports, Mr. Hamm never received any further medical examinations or treatment relating to those issues.  (Doc. 19-1 at 1).  And according to Dr. Charles Blanke, an oncologist who testified on Mr. Hamm's behalf, "[b]ased on the medical consultations done to date, it is impossible to state with any degree of certainty whether or not [Mr. Hamm] has active lymphoma overall."  (*Id.* at 2).

Mr. Hamm, in an affidavit, stated that since March or April 2017, nurses at Donaldson Correctional Facility had been able to draw blood only by using a small butterfly needle on a vein in his right hand.  (Doc. 14-6 at 1).  He attests that they "have had problems drawing blood from there," but it is the only vein from which they have had any success drawing blood.  (*Id.* at 1–2).  He states that in October and November 2017, nurses had unsuccessfully tried to draw blood from his hands, arms, and legs, "each time pricking [him] about 4 or 6 times."  (*Id.* at 2).  By contrast, nurses from Donaldson attested that they were able to draw blood on October 3, 2017, on the second attempt; on November 7, 2017, on the third attempt; on November 14, 2017, on the first attempt; and on December 18, 2017, on the first attempt.  (Doc. 12-6 at 2; Doc. 12-7 at 2).  Nurses were unable to draw blood on October 31, 2017.  (Doc. 12-6 at 2).  Dr. Heath explains that drawing blood with a small butterfly needle is easier than obtaining intravenous access with a catheter, as a catheter is larger than a butterfly needle.  (Doc. 14-5 at 2–3).

Difficulties obtaining access with a butterfly needle can indicate even more difficulty obtaining access with a catheter. (*Id.*).

On March 4, 2017, around the same time that Mr. Hamm noticed nurses having difficulty drawing blood, he also submitted a sick call request stating "need to see the doctor. I have lumps in my chest . . . ." (Doc. 14-4 at 12). On March 5, 2017, a nurse noted four "knots" on Mr. Hamm's chest near his clavicle, armpits, and above his navel. (*Id.* at 11). Dr. Roy Roddam, a prison physician, filled out a "progress note" on March 7, 2017, stating that Mr. Hamm was complaining of "mildly tender" knots on his chest. (*Id.* at 10). The handwriting is difficult to read, but appears to say that Mr. Hamm had "subcutaneous nodules" below the right clavicle and chest, among other areas. (*Id.*). Dr. Roddam wrote: "These feel like lymph nodes but could be [illegible] as their location is against lymphadenopathy." (*Id.*). Dr. Roddam noted the need for an X-ray and wrote "may need biopsy if continues to enlarge." (*Id.*). The record before the court on the motion for summary judgment contains no information about any X-ray or follow-up.

Dr. Heath examined Mr. Hamm on September 23, 2017. (Doc. 15-1). The Donaldson Correctional Facility staff would not permit him to bring in his medical equipment, but he reports that "Mr. Hamm has extremely poor peripheral venous access." (*Id.* at 3). He states that Mr. Hamm has no usable peripheral veins on his left arm and hand or either of his legs or feet. (*Id.*). On his right hand, he has one "small, tortuous vein . . . that is potentially accessible with a butterfly needle." (*Id.*). Dr. Heath could not evaluate the accessibility of Mr. Hamm's jugular, supraclavial, or femoral vein because he lacked medical equipment. (*Id.* at 4).

Prison physician Dr. Roddam attests that he conducted a medical examination of Mr. Hamm on January 2, 2018, and found "no evidence of lymphadenopathy in the cervical,

supraclavical, or axillary areas of Mr. Hamm's body." (Doc. 12-4 at 2). But Dr. Roddam's affidavit does not state whether he conducted any imaging tests, or merely palpated those areas of Mr. Hamm's body. Dr. Roddam also states that, in his opinion, "Mr. Hamm has two superficial veins in his right wrist that would be available for venous access." (*Id.*). Finally, and in contrast to almost every other medical professional who has examined Mr. Hamm, prison nurse Dennis Butler attests that Mr. Hamm has numerous peripheral veins suitable for peripheral intravenous access with a catheter. (Doc. 12-5 at 2).

4. Proposed Alternative Method of Execution

Mr. Hamm proposes, as an alternative method of execution, "oral injection" of either: (1) 10 grams of secobarbital; or (2) "DDMP II," which is composed of 1 gram of diazepam, 50 milligrams of digoxin, 15 grams of morphine sulfate, and 2 grams of propranolol. (Doc. 15 at 23). The proposed alternative procedure follows the procedure used under Oregon's Death with Dignity Act. Dr. Blanke, who specializes in end-of-life care and medical-aid-in-dying, testified at the evidentiary hearing that each of these drugs is common and readily available for prescription in the United States.

Dr. Blanke described a method of administering the proposed alternative drugs: a nasogastric tube, which is a thin tube placed up the nasal cavity and down into the stomach. He testified that the drug or drug combination would be placed into a syringe, which would then be inserted into the end of the nasogastric tube. The person administering the drugs would compress the plunger of the syringe, pushing the fluid through the tube and directly into the stomach; *i.e.*, the drugs would be injected into the person through the nasogastric tube. He testified that patients lose consciousness within five minutes and die within twenty-five minutes.

## III.  DISCUSSION

The court has before it Mr. Hamm's request for preliminary injunctive relief enjoining Defendants from executing him using intravenous injection.  (Doc. 15 at 44).  The court also has before it Defendants' motion for summary judgment on Mr. Hamm's amended complaint.  (Doc. 16).  The court will address Defendants' motion for summary judgment first, followed by Mr. Hamm's request for injunctive relief.  Finally, the court will discuss the need for a brief stay of execution, even though Mr. Hamm has not requested one.

### 1.  Motion for Summary Judgment

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  *Id.*  In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party."  *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

Mr. Hamm raises two claims in his amended complaint.  (Doc. 15 at 21, 30).  Defendants move for summary judgment, contending that the statute of limitations and the equitable doctrine of laches bar his amended complaint, and that Mr. Hamm has failed to create a genuine issue of material fact about a substantial risk of serious harm to him or about a known and available alternative method of execution.  (Doc. 16; Doc. 12 at 26–35; Doc. 18 at 19–30).

The court notes that, because Mr. Hamm's execution is scheduled for February 22, 2018, it expedited briefing and submission of evidence.  Neither party has had an opportunity to

conduct discovery. The court finds that, based on the record that currently exists, genuine issues

of material fact exist about whether Mr. Hamm's amended complaint is timely filed and whether

Alabama's method of execution is unconstitutional *as applied to him*. But the court notes that

once Mr. Hamm has had an independent medical examination and/or once the parties have had

an opportunity to conduct discovery, evidence may negate the genuine disputes of material fact

that currently exist.

### a. Statute of Limitations

Defendants contend that, under binding Eleventh Circuit precedent, Alabama's two-year

statute of limitations bars Mr. Hamm's complaint. (Doc. 12 at 20). They contend that his claim

accrued no later than July 2004, two years after Alabama adopted its current execution protocol.

(*Id.* at 20–22). And they contend that Mr. Hamm's unique medical condition does not change

that analysis because the factual allegations underlying his as-applied challenge have not

changed in the last two years. (*Id.* at 22–24).

Because Mr. Hamm's as-applied claim challenges Alabama's method of execution,

Alabama's two-year statute of limitations for personal injury actions applies to that claim. *Boyd*

*v. Warden, Holman Corr. Facility*, 856 F.3d 853, 872 (11th Cir. 2017). Typically, an inmate's

"method of execution claim accrues on the later of the date on which state review is complete, or

the date on which the capital litigant becomes subject to a new or substantially changed

execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). Under either of

those triggering dates, Mr. Hamm's lawsuit would be untimely because the state courts

completed review in 1990, (doc. 1 at 5–6), and Alabama enacted its current execution protocol

on July 1, 2002. *See West v. Warden, Comm'r, Ala. Doc*, 869 F.3d 1289, 1291 (11th Cir. 2017).

But Mr. Hamm does not raise a facial challenge to Alabama's method of execution. Instead, Mr. Hamm contends that, because of his unique medical condition, which arose years after the limitations period for a facial challenge expired, Alabama's method of execution is unconstitutional *as applied to him*. The Eleventh Circuit has indicated that the triggering date for an as-applied challenge is different from the triggering date for a facial challenge.

For example, in *Siebert v. Allen*, the plaintiff raised a facial challenge to Alabama's method of execution, and while his lawsuit was pending, he received a diagnosis of hepatitis C and pancreatic cancer. 506 F.3d 1047, 1048 (11th Cir. 2007). The plaintiff "immediately" filed an amended complaint adding an as-applied claim. *Id.* The district court dismissed the facial challenge based on the plaintiff's unreasonable delay in bringing the claim, but concluded that the as-applied claim was not barred by the statute of limitations or the doctrine of laches because the plaintiff filed it "as soon as he could have brought it." *Id.* at 1049. The Eleventh Circuit agreed. *See id.* at 1050 ("Given the timeliness of the filing of Siebert's 'as-applied' claim . . . .").

And in *Gissendaner v. Commissioner, Georgia Department of Corrections*, the Eleventh Circuit affirmed the dismissal as untimely of a plaintiff's as-applied claims because "they rely on factual conditions that have not changed in the past twenty-four months." 779 F.3d 1275, 1281 (11th Cir. 2015). The only reason to count back twenty-four months from filing would be if specific factual conditions could trigger a new statute of limitations for an as-applied challenge. The court rejects Defendants' argument that Mr. Hamm's cause of action for his *as-applied* challenge expired in 2004, two years after Alabama last significantly changed its lethal injection protocol.

Mr. Hamm filed his complaint on December 13, 2017. So the question is whether Mr. Hamm's as-applied claim accrued within the preceding two years; *i.e.*, after December 13,

2015.  Mr. Hamm contends that his peripheral vein access worsened in the spring of 2017, meaning that Defendants would have to resort to a central line to execute him; but his lymphadenopathy makes central line placement extremely risky.  If that contention is true, then his as-applied challenge is timely.

The court finds that genuine disputes of material fact exist about whether and, if so, when Mr. Hamm's medical condition changed in a way that gave rise to his as-applied challenge. Mr. Hamm states in a sworn affidavit that nurses at Donaldson began having trouble even drawing blood—a process that is easier than inserting a catheter—starting in March or April 2017.  (Doc. 14-6).  That affidavit is sufficient to create a genuine issue of material fact about when medical professionals began having trouble gaining peripheral venous access.

Defendants contend that "Hamm provides no evidence, *outside of his self-serving affidavit*, to support" the assertion that his peripheral venous access began manifesting in 2017. (Doc. 18 at 6 n.1) (emphasis added).  But as the *en banc* Eleventh Circuit reminded us a few days ago, "an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment *even if it is self-serving and uncorroborated*."  *United States v. Stein*, slip op. 16-0914, at 2 (11th Cir. January 31, 2018) (en banc) (emphasis added); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."), *modified on other grounds on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005).

Defendants argued at the hearing that the court should disregard Mr. Hamm's affidavit because it is a sham affidavit. "The Eleventh Circuit, in limited circumstances, allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). Defendants have not pointed to any prior deposition testimony from Mr. Hamm stating that his peripheral veins were inaccessible before 2017. And in any event, the court notes that Mr. Hamm underwent at least one MRI with contrast in 2014, indicating that medical professionals were able to insert a catheter at that time. (*See* Doc. 14-4 at 16). The court declines to find that Mr. Hamm's affidavit is a sham.

The court also notes that genuine disputes of material fact exist about how many of Mr. Hamm's peripheral veins are accessible for drawing blood. Dr. Heath says Mr. Hamm *might* have one vein; Dr. Roddam says Mr. Hamm has two; and Mr. Butler says Mr. Hamm has multiple accessible veins. But as Dr. Heath testified, veins that are accessible for drawing blood may not be accessible for inserting an intravenous catheter. Even if Mr. Hamm has peripheral veins that can support insertion of a butterfly needle for the purpose of drawing blood, the court finds a genuine dispute of material fact about whether peripheral venous access exists for the purpose of inserting an intravenous catheter.

Next, the court finds the existence of a genuine dispute of material fact about whether Mr. Hamm's lymphoma is active and whether he is currently experiencing lymphadenopathy. According to Dr. Heath, lymphoma is a progressive disease. According to the medical records available to the court on this motion for summary judgment, aside from the tumor in his head, Mr. Hamm has received no medical treatment for his lymphoma since 2015 at the latest. It is not

a stretch to infer that an untreated (and unmonitored) progressive disease could worsen over the course of time and finally manifest in later years.

The court finds that Mr. Hamm presented sufficient evidence to create a genuine dispute of material fact about whether the cumulative effect of his lymphoma, history of intravenous drug use, and untreated abnormal lymph nodes in his chest and abdomen resulted in worsened peripheral veins that manifested in spring 2017. The court WILL DENY Defendants' motion to dismiss Mr. Hamm's complaint as time-barred under the statute of limitations.

       *b. Laches*

Defendants contend that, even if Mr. Hamm's complaint is timely under the statute of limitations, the court should dismiss it based on the doctrine of laches because Mr. Hamm unreasonably delayed filing his complaint, causing the State undue prejudice. (Doc. 12 at 9–10).

The court finds that, if Mr. Hamm's condition truly worsened in March 2017, a nine-month delay is not unreasonable in this case, especially in light of his efforts to exhaust his claim. Mr. Hamm contends that, based on principles of federalism and comity, he *could not* have filed his § 1983 complaint until after the Alabama Supreme Court rejected his as-applied claim. And the Alabama Supreme Court *requested* Mr. Hamm's response to the State's motion to set an execution date.

Indeed, the Supreme Court in *Nelson v. Campbell* stated that the Prison Litigation Reform Act, which applies to death sentenced inmates challenging the method of their execution, "requires that inmates exhaust available state administrative remedies before bringing a § 1983 action challenging the conditions of their confinement." 541 U.S. 637, 650 (2004). But the court doubts that opposing the State's motion to set an execution date qualifies as exhausting *administrative* remedies under the Prison Litigation Reform Act, or that Mr. Hamm's federal

case was not ripe until the Alabama Supreme Court set the execution date. Nevertheless, the court finds that Mr. Hamm reasonably believed that he needed to make his argument to the Alabama Supreme Court before making it to this court.

In addition, the court notes that, despite the diligent efforts of Mr. Hamm's counsel to obtain Mr. Hamm's medical records from Defendants, they did not provide those medical records to him until June 2017. Nor did Defendants permit Dr. Heath to examine Mr. Hamm until September 2017. It was not unreasonable for Mr. Hamm to wait to file his complaint until he had some evidence to support his allegations. Because laches is an equitable doctrine, and the equities in this case play both ways, the court WILL DENY Defendants' motion to dismiss Mr. Hamm's complaint based on laches.

### c. Merits

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015). The Supreme Court has noted that "because it is settled that capital punishment is constitutional, it necessarily follows that there must be a constitutional means of carrying it out." *Id.* at 2732 (quotation marks omitted).

Alabama Code § 15-18-82.1 provides that "[a] death sentence shall be executed by lethal injection, unless the person sentenced to death affirmatively elects to be executed by electrocution." Ala. Code § 15-18-82.1(a). Mr. Hamm did not elect execution by electrocution within the time period required by the statute, so he has waived that method of execution. *See id.* § 15-18-82.1(b) (requiring the prisoner to elect execution by electrocution within 30 days after July 1, 2002); (Doc. 1 at 3–4). As a result, under Alabama law, the only currently lawful

method to execute Mr. Hamm is by "lethal injection." The Alabama Code does not define "lethal injection."

To prevail on an Eighth Amendment challenge to a State's method of execution, a prisoner must demonstrate that "the method presents a risk that is '*sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion) (some quotation marks omitted) (emphases in original). In addition, "prisoners must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (quoting *Baze*, 553 U.S. at 52) (second alteration in original); *see also Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 803 F.3d 565, 569 (11th Cir. 2015) (applying the readily-available alternative requirement to an as-applied challenge of a State's method of execution). The proposed alternative method "must significantly reduce a substantial risk of severe pain." *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1299 (11th Cir. 2016).

> *Glossip*'s 'known and available' alternative test requires that a petitioner must prove that (1) the State actually has access to the alternative; (2) the State is able to carry out the alternative method of execution relatively easily and reasonably quickly; and (3) the requested alternative would in fact significantly reduce a substantial risk of severe pain relative to the State's intended method of execution.

*Id.* at 1299 (quotation marks and alteration omitted). The Eleventh Circuit has interpreted the "known and available" prong of *Glossip*'s test to require that the plaintiff first show that the State's statutorily authorized method of execution is unconstitutional before proposing any other method that is not statutorily authorized. *Id.* at 1316–17; *see also Boyd*, 856 F.3d 853, 867 (11th Cir. 2017).

A genuine dispute of material fact exists about whether Mr. Hamm has adequate peripheral venous access to allow Defendants to execute him without resorting to a central line.

And a genuine dispute of material fact exists about whether Mr. Hamm has lymphadenopathy in areas of his body that would make a central line placement extremely dangerous. As a result, the court finds that a genuine dispute of material fact exists about whether executing Mr. Hamm using the intravenous injection method described in Alabama's lethal injection protocol "presents a risk that is '*sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737. If his medical condition is as he alleges, then his execution would be unnecessarily painful and dangerous.

Mr. Hamm has offered two alternative methods of execution: (1) 10 grams of secobarbital; or (2) "DDMP II," which is composed of 1 gram of diazepam, 50 milligrams of digoxin, 15 grams of morphine sulfate, and 2 grams of propranolol. (Doc. 15 at 23). Dr. Blanke, a physician who specializes in medical-aid-in-dying, attests that he has used those methods for patients in Oregon. (Doc. 15-3). He attests that they cause death in "more than 99% of cases" and that complications are "extremely rare." (*Id.* at 1–2).

The court finds that, if Mr. Hamm can prove the inaccessibility of his peripheral and central veins, his proposed alternative "significantly reduce[s] a substantial risk of severe pain." *Arthur*, 840 F.3d at 1299. He has offered at least some evidence that, *as applied to him*, Alabama's method of execution may be ineffective and painful, while his proposed alternative is very likely to be effective and painless.

Defendants contend that Mr. Hamm's alternative is not feasible or readily implemented because Mr. Hamm would have to drink either of the proposed drug combinations, so they cannot be considered "lethal injections." *See* Ala. Code § 15-18-82.1(a) (requiring execution by "lethal injection").

As Dr. Blanke testified and as Taber's Medical Dictionary states, the medical definition of "injection" does not require a needle piercing the body; it requires only "[t]he forcing of a fluid into a vessel, tissue, *or cavity*." Injection, Taber's Medical Dictionary Online, *https://www.tabers.com/tabersonline/view/Tabers-Dictionary/757723/all/injection?q=injection* (emphasis added). Non-medical dictionaries appear to agree. *See* Inject, Merriam-Webster's Dictionary, *https://www.merriam-webster.com/dictionary/injecting* ("[T]o force a fluid into"); Inject, Oxford English Dictionary, *http://www.oed.com/view/Entry/96079?redirectedFrom=inject#eid* ("To drive or force (a fluid, etc.) in a passage or cavity, as by means of a syringe, or by some impulsive power; said esp. of the introduction of medicines or other preparations into the cavities or tissues of the body.").

The court finds that administration of the proposed alternative drugs through a nasogastric tube would comply with Alabama's statute requiring execution by "lethal injection" because it would involve forcing the liquid into Mr. Hamm's body. But the court also finds that, even if Alabama's statute requiring "lethal injection" required a needle piercing the inmate's skin, Mr. Hamm has presented sufficient evidence to create a genuine issue of material fact about whether that type of "lethal injection" would be unconstitutional *as applied to him*. As a result, even if administration of the drugs by nasogastric tube is not statutorily allowed under Alabama law, the court finds that, *at this stage*, Mr. Hamm has presented sufficient evidence to defeat summary judgment. The court WILL DENY summary judgment as to Mr. Hamm's as-applied claim.

The court notes that Mr. Hamm raised an Eighth Amendment deliberate indifference claim in his amended complaint, which he filed during the expedited briefing schedule on his initial complaint. The court finds that ruling on Defendants' motion as to Mr. Hamm's second

claim would be premature because the parties have not had an adequate opportunity to conduct discovery. *See WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988) ("[S]ummary judgment may only be decided upon an adequate record."). The court WILL DENY AS PREMATURE the motion for summary judgment on the merits of Mr. Hamm's second Eighth Amendment claim.

### 2. Request for Injunctive Relief

Mr. Hamm has not moved this court to stay his execution, but he does seek an injunction enjoining Defendants from executing him by intravenous injection. (Doc. 15 at 44). But "[t]he standard for granting a temporary restraining order or a stay of execution is the same." *Gissendaner*, 779 F.3d at 1280. The movant must show that "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest." *Valle v. Singer*, 655 F.3d 1223, 1225 (11th Cir. 2011). In addition, "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (quoting *Nelson*, 541 U.S. at 650).

The court reserves ruling on Mr. Hamm's request for preliminary injunctive relief because the court lacks sufficient information to determine whether execution by intravenous injection would violate Mr. Hamm's right to be free of cruel and unusual punishment. At this stage, Mr. Hamm has presented sufficient evidence to defeat Defendants' motion for summary judgment, but he has not presented evidence *establishing* that he lacks the number and quality of peripheral veins needed for Defendants to execute him under Alabama's lethal injection

protocol. Nor has he presented evidence *establishing* that he is experiencing lymphadenopathy, such that Defendants could not safely resort to the protocol's alternative method of execution using a central line. The court notes that Defendants control Mr. Hamm's ability to obtain such information *and* the medical examinations that will be necessary for Mr. Hamm to prove those facts (or for Defendants to disprove them).

As a result, although the court declines to enter a preliminary injunction at this time, the court will enter a stay of execution so that an independent medical examiner can be appointed to examine Mr. Hamm and report to the court about his current medical condition. The court acknowledges that Mr. Hamm has not requested a stay of execution, but the court *sua sponte* finds that a stay is necessary. *See Grayson v. Allen*, 499 F. Supp. 2d 1228, 1234 (M.D. Ala. 2007), *affirmed by* 491 F.3d 1318 (11th Cir. 2007) ("'Consideration of the merits' means more than a hurried hearing by a harried judge and counsel. As the Eleventh Circuit intimated in *Jones* [*v. Allen*, 485 F.3d 635, 640 n.2 (11th Cir. 2007)], consideration of the merits in this circuit means full adjudication, entailing a sufficient period to conduct discovery, depose experts, and litigate the issue on the merits, including any appeals. . . . [I]f full adjudication is not possible on a fast-track schedule here, then the issue of a stay of execution arises . . . .").

The court has considered the equities and has concluded that, under the information currently available to Mr. Hamm and to the court, he has shown a substantial likelihood of success on the merits, a risk that he will suffer irreparable injury absent a stay, no substantial risk of harm to Defendants, and that the stay would not be adverse to the public interest.

As discussed above, Mr. Hamm has created genuine issues of material fact about whether Alabama's method of execution is unconstitutional *as applied to him* in light of his unique medical conditions. If, with the benefit of discovery, he can substantiate the inferences the court

was required to draw in his favor at the summary judgment stage, he would prevail on his as-applied claim. At this stage, Mr. Hamm has shown a substantial likelihood of success on the merits. The risk that Mr. Hamm will suffer irreparable injury absent a stay is self-evident, and the court will not dwell on it.

The court will, however, briefly dwell on the risk of harm to Defendants. The State of Alabama has a legitimate interest in carrying out the execution of Mr. Hamm's sentence. The family of Mr. Hamm's victim also has a significant interest in the execution of Mr. Hamm's sentence. The court is mindful of those important considerations. But the court notes that both of those interests will be satisfied; Mr. Hamm will be executed, either by intravenous injection or by "oral injection."

The court has also considered whether a stay would be adverse to the public interest. The court finds that, in this case, a stay could not be adverse to the public interest. The public interest requires *constitutional* punishments. An execution that is carried out in a cruel and unusual manner is decidedly adverse to the public interest.

Finally, the court has considered the "'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584. As discussed above, at this stage, and on the record currently before the court, the court finds that Mr. Hamm brought his complaint in a timely manner. If he brought it later than the court would have preferred, it was not due to lack of diligence or in a bad faith attempt to delay his execution.

As soon as possible after the entry of this opinion and order, the court will appoint an independent medical examiner who will examine Mr. Hamm and report the medical findings back to the court. The medical examiner will evaluate the accessibility of Mr. Hamm's

peripheral veins as well as the current status of his lymphoma and whether he is currently experiencing lymphadenopathy, or any medical condition that would interfere with Mr. Hamm's execution by lethal intravenous injection. Once the court has received the medical examiner's report, the court will reevaluate the necessity for a stay or a preliminary injunction.

## IV.  CONCLUSION

The court WILL DENY Defendants' motion for summary judgment on timeliness grounds. The court WILL DENY Defendants' motion for summary judgment on the merits of Mr. Hamm's as-applied claim. The court WILL DENY AS PREMATURE Defendants' motion for summary judgment on the merits of Mr. Hamm's other Eighth Amendment claim. The court RESERVES RULING on Mr. Hamm's request for a preliminary injunction. The court WILL STAY Mr. Hamm's execution.

**DONE** and **ORDERED** this 6th day of February, 2018.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE