## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DOYLE LEE HAMM, | ] | |
| | ] | |
|     **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **JEFFERSON S DUNN, COMMISSIONER,** | ] | |
| **ALABAMA DEPARTMENT OF** | ] | |
| **CORRECTIONS;** | ] | **2:17-cv-02083-KOB** |
| **CYNTHIA STEWART, WARDEN,** | ] | |
| **HOLMAN CORRECTIONAL FACILITY;** | ] | |
| **LEON BOLLING, III, WARDEN,** | ] | |
| **DONALDSON CORRECTIONAL FACILITY;** | ] | |
| **OTHER UNKNOWN EMPLOYEES AND** | ] | |
| **AGENTS, ALABAMA DEPARTMENT OF** | ] | |
| **CORRECTIONS** | ] | |
| | ] | |
|     **Defendants.** | ] | |

## MEMORANDUM OPINION

On March 28, 2018, three non-party media entities ("the Intervenors") moved to intervene and unseal judicial records in this case. (Doc. 107). The court granted the motion to intervene and ordered Defendants to respond to the motion to unseal. (Doc. 111). In their response, Defendants moved for reconsideration of this court's order granting the Intervenors' motion to intervene. (Doc. 119 at 15). Accordingly, this matter is before the court on the Intervenors' motion to unseal judicial records (doc. 107) and Defendants' motion for reconsideration of their intervention (doc. 119 at 15).

The court WILL DENY Defendants' motion for reconsideration because the court concludes that the Intervenors have demonstrated that intervention is proper. The court WILL GRANT the Intervenors' motion to unseal because the public has a common law right of access to the sealed records relating to Alabama's lethal injection protocol.

## I.    BACKGROUND

On December 13, 2017, Doyle Lee Hamm filed a complaint challenging the constitutionality of Alabama's method of execution as applied to him. (Doc. 1). He also sought a preliminary injunction to prevent his execution, which the Alabama Supreme Court had set for February 22, 2018. (*See* Doc. 30 at 5). Defendants moved for summary judgment on the complaint. (Doc. 12). Because of the very short period of time between Mr. Hamm's filing of the complaint and the scheduled execution, the court ordered expedited briefing and, on January 31, 2018, held a hearing on Mr. Hamm's request for injunctive relief and Defendants' motion for summary judgment. (*See* Doc. 30 at 5–6).

At a pre-hearing status conference in chambers, the court notified the parties that it would need to review Alabama's lethal injection protocol. Defendants agreed to produce the protocol for the court's *in camera* review before the hearing, and also agreed to provide Mr. Hamm's attorney with a redacted copy of the protocol, subject to a confidentiality agreement. On January 30, 2018, the parties filed a joint motion for a protective order (doc. 26), and the court entered the Agreed Confidentiality Order (doc. 28). That Order provided that the parties and their counsel had agreed to keep the protocol and the information contained within the protocol confidential. On January 31, 2018, Defendants provided paper copies of the lethal injection protocol to the court and a redacted version to Mr. Hamm's attorney.

The morning session of the January 31 hearing dealt with Defendants' motion for summary judgment, and the afternoon session dealt with Mr. Hamm's request for preliminary injunctive relief. (*See* Doc. 52 at 3, 70–74). Because part of the afternoon session revolved around the confidential lethal injection protocol, the court conducted that part of the hearing *in*

*camera*, and the transcript of that part of the hearing remains sealed. (*See* Doc. 53). The audience present during the public parts of the hearing included members of the press.

On February 6, 2018, the court entered a memorandum opinion and order reserving ruling on Mr. Hamm's request for preliminary injunctive relief, denying Defendants' motion for summary judgment, and staying Mr. Hamm's execution to allow time for an independent medical examination. (Docs. 30, 31). Defendants appealed the court's grant of a stay, and on February 13, 2018, the Eleventh Circuit vacated the stay of execution and remanded with instructions for the court to immediately appoint an independent medical expert and to make factual findings regarding Mr. Hamm's still-pending motion for injunctive relief by no later than February 20, 2018. (Doc. 38). Meanwhile, Mr. Hamm's execution was still scheduled to take place on February 22, 2018.

In compliance with the Eleventh Circuit's instructions, the court appointed an independent medical expert, who conducted an examination of Mr. Hamm. (Doc. 75). The Intervenors' motion to unseal records does not relate to the identity of the independent medical expert, and all identifying information about the expert will remain sealed.

On February 16, 2018, the court held another hearing, which the court closed to the public to protect the identity of the independent medical examiner and the confidentiality of the lethal injection protocol, both of which the court anticipated the parties would discuss extensively at the hearing. At that hearing, the court denied Mr. Hamm's request for preliminary injunctive relief based on the medical exam and certain representations from Defendants. (*See* Doc. 58-2). The court followed with a memorandum opinion and order on February 20, 2018. (*Id.*).

On February 22, 2018, the State unsuccessfully attempted to execute Mr. Hamm. On March 26, 2018, Mr. Hamm filed a second amended complaint, and on the same day, the parties stipulated to the dismissal of the case. (Docs. 103, 104). Two days later, on March 28, 2018, the court dismissed the case. (Doc. 105).

On March 28, 2018, the same day that the court dismissed the case, the Intervenors filed their motion to intervene and to unseal the lethal injection protocol and other court records relating to the protocol. (Doc. 107). On March 30, 2018, the court granted the motion to intervene, under Federal Rule of Civil Procedure 24(a)(2), but reserved ruling on the motion to unseal. (Doc. 111). Defendants opposed the motion to unseal, and also sought reconsideration of the court's order granting the motion to intervene. (Doc. 119 at 15).

## II.    DISCUSSION

<u>1.</u>    <u>Defendants' Motion for Reconsideration</u>

The Intervenors moved to intervene "to vindicate constitutional and common law claims for access to court records." (Doc. 108 at 14). The court granted the motion to intervene two days after the Intervenors filed it, without requiring a response from Defendants. (Doc. 111). Now, Defendants seek reconsideration of the order granting intervention. (Doc. 119 at 15–19).

"[R]econsideration of an order is an extraordinary remedy and is employed sparingly." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1267–68 (N.D. Ala. 2006). Reconsideration is available only "when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). But because this court did not afford Defendants an opportunity to

respond to the motion to intervene, Defendants have not presented any of their arguments before, so the court will consider their arguments as if they had made them in the first instance.

The Intervenors did not identify whether they sought to intervene under Federal Rule of Civil Procedure 24(a), which governs intervention of right, or Rule 24(b), which governs permissive intervention. The court granted intervention of right under Rule 24(a). (Doc. 111). Rule 24(a)(2) provides that the court must permit intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." But even if the Intervenors were not entitled to intervene as of right under Rule 24(a), they were entitled to intervene under Rule 24(b). *See Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) ("[P]ermissive intervention under Rule 24(b) is an appropriate procedural vehicle for non-parties seeking access to judicial records in civil cases.") (footnote omitted).

In granting the motion to intervene, the court found that the motion was timely because the Intervenors filed it within two months of the court docketing the Agreed Confidentiality Order and just hours after this court closed the case. (Doc. 111 at 2). The court also found that the Intervenors had an interest in the "matter of intense public interest: the method by which the State of Alabama exercises the power to put people to death," and that the parties did not adequately represent that interest. (*Id.*). Defendants contend that the motion was not timely and denial of intervention would not impede Intervenors' interest in accessing the lethal injection protocol. (Doc. 119 at 15–19).

In considering the timeliness of a motion to intervene, the Eleventh Circuit explained:

A district court must consider four factors . . . , namely (1) the length of time during which the would-be intervenor knew or reasonably should have

known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

Defendants argue that the Intervenors' motion was untimely because (1) the Intervenors have known for years of Defendants' position that the lethal injection protocol is a confidential document; (2) the Intervenors have known about the *Hamm* case since mid-January 2018, when a news article about the case appeared on al.com; (3) a reporter working for one of the Intervenors was present at the public portion of the January 31 hearing, at which time the court also held an *in camera* hearing about the lethal injection protocol; (4) the Intervenors' delay in filing the motion to intervene prejudices Defendants because they would not have voluntarily disclosed the lethal injection protocol to Mr. Hamm's attorney if they had known it would be the subject of a motion to unseal; (5) Defendants would have taken a different approach to settling the case if they had known the lethal injection protocol would be the subject of a motion to unseal; and (6) the Intervenors would not be prejudiced by denial of the right to intervene because they can seek to intervene in any of the "ubiquitous" § 1983 method-of-execution claims that are or soon will be open. (Doc. 119 at 16–18).

Defendants have a point about how long the Intervenors waited to file this action. As Defendants point out, at the open court part of the January 31 evidentiary hearing—with a reporter sitting in the audience—the parties discussed the disclosure of the lethal injection protocol and the fact that the *in camera* hearing was about that protocol. (Doc. 52 at 21, 63, 75). So the court imputes knowledge of the disclosure of the lethal injection protocol to the Intervenors no later than January 31. But the Intervenors waited until March 28—two days after

the parties notified the court about the settlement agreement, and the same day that the court closed the case—to file their motion to intervene and unseal the records. (Doc. 107).

The former Fifth Circuit has stated that "intervention after judgment is unusual and not often granted." *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1071 (5th Cir. 1970) (quotation marks omitted).[1] But "[t]he most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenors' delay in moving to intervene. In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right." *Id.* at 1073 (citations omitted).

Defendants contend that intervention would prejudice them because they would not have voluntarily disclosed the lethal injection protocol if they had known the Intervenors would move to unseal it. The court does not find that argument persuasive. The lethal injection protocol was central to Mr. Hamm's as-applied challenge to the method of execution, and even if Defendants had not agreed to voluntarily disclose it, the court would have ordered them to produce it; the court needed to review the protocol as much if not more than Mr. Hamm did.

Likewise, the court finds unpersuasive the argument that Defendants would have taken a different tack in settling the case if they had known that the Intervenors would seek to unseal the lethal injection protocol and records relating to it. The only parties to the settlement agreement are Mr. Hamm and Defendants; and neither *party* is seeking to unseal the protocol or related records. They could not have reached any agreement about what any member of the public would do about seeking to unseal records, because they have no control over what members of the public might seek to unseal. What's more, Defendants know that the lethal injection

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

protocols created by most States are public documents; Mr. Hamm's attorney made a statement to that effect during the *in camera* part of the January 31 hearing. (Doc. 53 at 13). And the court found protocols from 21 death-penalty states available at https://deathpenaltyinfo.org/state-lethal-injection.

Finally, the court finds unconvincing the argument that the Intervenors will not be prejudiced because they can seek to intervene in any other § 1983 method-of-execution case. First, Defendants do not indicate if they routinely disclose the lethal injection protocol in method-of-execution cases. Second, in the court's experience, most method-of-execution challenges involve only a facial challenge to a State's method of execution. As the court discussed at more length in its first memorandum opinion in this case, (doc. 30) the statute of limitations in a facial challenge to Alabama's method of execution begins running "on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008). Most inmates face execution many years after completing state review, and Alabama enacted its current execution protocol on July 1, 2002. *See West v. Warden, Comm'r, Ala. Doc.*, 869 F.3d 1289, 1291 (11th Cir. 2017). As a result, in most cases, the statute of limitations will bar an inmate's facial challenge to Alabama's method of execution, and the State would not need to disclose the protocol.

Finally, as the court will discuss in more detail below, the court highlights the "general presumption that criminal and civil actions should be conducted publicly and includes the right to inspect and copy public records and documents." *FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (quotation marks omitted) (citing *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). The court concludes that the factors weigh in favor

of finding that the Intervenors' motion to intervene was timely and that denial of intervention would impair the Intervenors' interest in seeking to unseal the court records. The court WILL DENY Defendant's motion for reconsideration.

2. Motion to Unseal Lethal Injection Protocol and Related Records

The Intervenors seek to unseal the lethal injection protocol and related court records, contending that the public has a common law right of access. (Doc. 108). Defendants respond that the lethal injection protocol is not a judicial record and that even if it were a judicial record, Defendants' interest in keeping those documents confidential outweighs the public's interest in accessing them.[2] (Doc. 119).

The Supreme Court has stated that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted); *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983) (extending *Nixon*, a case about the common law right of access to records in criminal cases, to civil cases). The common law right of access creates "a general presumption that criminal and civil actions should be conducted publicly." *FTC*, 713 F.3d at 62 (quotation marks omitted). Specifically, the common law right of access creates a presumptive right to access "judicial records," but not to other types of records. *Id.*

a. Judicial Records

The Intervenors contend that the lethal injection protocol is a judicial record because the protocol was central to the court's ruling on Defendants' motion for summary judgment. (Doc. 108 at 24–25). Defendants respond that the lethal injection protocol is not a judicial record.

_____

[2] Because the court concludes that the public has a common law right of access to the Alabama lethal injection protocol and related records, the court will not address the Intervenors' argument that the public has a First Amendment right of access to the contested documents.

(Doc. 119 at 20–22, 29–31). They argue that the parties never filed the protocol on the electronic docket, attached it to any pleadings or dispositive motions, or admitted it as an exhibit at any of the hearings in this case. (*Id.* at 20–21). They also contend that the lethal injection protocol did not play "a dispositive role" in resolving Mr. Hamm's claim, because his claim actually hinged on the condition of his veins, not the content of the protocol. (*Id.* at 21).

The court agrees that "documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986); *see also In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) ("[A]ppellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record.").

But, although documents collected during discovery are not "judicial records," documents "filed in connection with pretrial motions that require judicial resolution of the merits [are] subject to the common-law right [of access]." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *see also Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001) ("[D]iscovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right . . . ."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121–23 (2d Cir. 2006) (collecting cases from the First, Second, Third, Fourth, and Ninth Circuits holding that documents submitted in support of a motion for summary judgment are "judicial records").

Defendants hang their hats on the fact that no party *filed* the lethal injection protocol as an exhibit to the motion for summary judgment, exhibit in opposition to the motion, or exhibit at the hearings on Mr. Hamm's request for injunctive relief, and that Mr. Hamm's claim relied not

on the protocol but on the condition of his veins. (Doc. 119 at 21). The hook will not hold the weight of that argument.

As to Mr. Hamm's claim, he did not have access to the lethal injection protocol until Defendants provided it to him pursuant to the Agreed Confidentiality Order, so he could not have presented anything about the protocol in his complaint. But the parties' joint motion for a protective order to keep the lethal injection protocol confidential acknowledged that "[p]art of [Mr. Hamm's] claims concern the Alabama Department of Corrections' (ADOC) execution protocol." (Doc. 26 at 1). And Mr. Hamm's motion to file a second amended complaint relies heavily on the provisions in the lethal injection protocol. (Doc. 54).

Defendants correctly point out that no party ever attached the protocol to a pleading or filing in this case; indeed, the protocol does not appear anywhere in the electronic docket. The court finds that, in the particular circumstances present in this case, the failure to formally file the protocol does not make it a non-judicial record.

Although the lethal injection protocol does not appear on the electronic docket, Defendants did submit the protocol to the court at the court's request, and even agreed with Mr. Hamm on a stipulated protective order before submitting it. (*See* Doc. 28). In the rush to address Mr. Hamm's as-applied claim before his scheduled execution date, the parties failed to submit an *electronic* version of a record or to *formally* attach the protocol to their filings with the court. Assuming that the parties would present the protocol as an exhibit during the hearing, the court immediately began to make notes on the paper version Defendants submitted to it. In the press of time, the parties and the court did not cross all Ts or dot all Is to have the protocol filed of record.

But the court needed and relied upon the protocol to resolve Defendants' motion for summary judgment and Mr. Hamm's request for preliminary injunctive relief. Although the court's memorandum opinion, which the court had to draft under extreme time pressure in view of the rapidly approaching execution date, does not expressly discuss the court's view of how the lethal injection protocol related to the condition of Mr. Hamm's veins, the court relied heavily on the protocol in finding that genuine issues of material fact existed about the merits of Mr. Hamm's as-applied claim.

For example, the court described the lack of information in the lethal injection protocol about limits on the numbers of attempts to obtain peripheral venous access, and explained Mr. Hamm's position that "attempts to insert the intravenous catheter would subject him to unlimited and repeated needle sticks." (Doc. 30 at 2, 7–8, 19–20). And the court had to rely on the lethal injection protocol to know exactly what type and number of veins Defendants would need to access during Mr. Hamm's execution. (*See id.* at 20 ("[T]he court finds that a genuine dispute of material fact exists about *whether executing Mr. Hamm using the intravenous method described in Alabama's lethal injection protocol* 'presents a risk . . . .'") (emphasis added). The court could not have made that determination if it did not know the method described by Alabama's lethal injection protocol.

Any gaps in the memorandum opinion's discussion of the interplay between the lethal injection protocol and the condition of Mr. Hamm's veins indicate only that the court did not have time to fully flesh out the opinion, not that the court did not rely on the lethal injection protocol or the evidence presented at the *in camera* hearing *about* the lethal injection protocol as applied to Mr. Hamm. (*See* Doc. 53).

The court could not have analyzed the effect the condition of Mr. Hamm's veins would have on his execution if the court did not know the details about how Mr. Hamm would be executed. Even if the court's opinion lacked a detailed analysis of the interaction between the protocol and Mr. Hamm's condition, the protocol was vital to resolving Defendants' dispositive motion.

Further supporting the court's finding that the lethal injection protocol is a judicial record are the facts that other judicial records referred to and incorporated the lethal injection protocol itself. The *in camera* part of the January 31 hearing was *in camera* precisely because it involved the confidential protocol. And Mr. Hamm's sealed motion for leave to supplemental his first amended complaint quotes extensively from both the protocol itself, and from the January 31 *in camera* hearing. (Doc. 54).

The court notes that the Eleventh Circuit has stated that it does not follow "an *ad hoc* standard that a document's status as a judicial record is dependent upon whether it played a discernible role in the resolution of the case." *FTC*, 713 F.3d at 64. At first glance, that sentence seems to indicate that a court's reliance on a document is irrelevant when determining whether a document is a judicial record. But the facts in the *FTC* case clarify that the Court was not making such a holding. In *FTC*, the plaintiff had attached a document to its complaint, and the district court had sealed the document for containing "sensitive financial information." *Id.* at 58–59. The district court eventually dismissed the complaint on grounds unrelated to the information contained in the sealed document. *Id.* at 59. When the plaintiff later sought to unseal the document, the defendant argued that the document was not a judicial record because the district court did not rely on it in its decision disposing of the case. *Id.* at 63. The Eleventh Circuit rejected that argument, stating that "we determine whether a document is a judicial

record depending on the type of filing it accompanied," not based on "whether it played a discernible role in the resolution of the case." *Id.* at 64.

The facts in the *FTC* case are the inverse of the facts in this case. In *FTC*, the plaintiff filed the document with the court, but the court did not rely on it. In this case, no party formally filed the document with the court, but the court *did* rely on it. Under these circumstances, the court finds that the lethal injection protocol is a judicial record, submitted to the court for consideration in conjunction with Defendants' motion for summary judgment and Mr. Hamm's request for preliminary injunctive relief.

### b. Common Law Right of Access to Judicial Records

The Intervenors contend that the public has a common law right of access to the lethal injection protocol and related records because (1) the records concern a matter of public concern (the means by which Alabama carries out executions); (2) disclosure of the records would shed light on the historically significant event of the State's attempt to execute Mr. Hamm; (3) the Intervenors do not seek the records to cause scandal or for a commercial advantage; and (4) to the extent that the protocols contain information that must remain sealed, redactions would protect that information while satisfying the public's right to access. (Doc. 108 at 27–30).

Defendants contend that their interest in keeping the protocol confidential outweighs the Intervenors' interest in accessing it. (Doc. 119 at 32–36). They argue that (1) the Intervenors seek the lethal injection protocol to "gin up public scandal concerning the death penalty and the procedures that surround it"; (2) disclosure of the protocol will not aid in historical understanding of the attempt to execute Mr. Hamm because the news has already reported on what happened that night; (3) the court's memorandum opinion about Defendants' motion for summary judgment already summarized a substantial part of the protocol, and the court's orders

following the January 31 and February 16 closed hearings summarized the content of those

hearings; (4) the protocol contains security procedures and information that could be used to

identify people involved in the execution of death sentences; and (5) the Alabama Department of

Corrections has consistently worked to maintain the confidentiality of the protocol in this and

other cases.  (*Id.* at 32–36; Doc. 119-1 at 2–3).

But the public has a presumptive common law right of access to judicial records.  *Chi.

Tribune Co.*, 263 F.3d at 1311.  Where a court seals *parts* of a record, the court must "balance

the competing interests of the parties" in determining whether to unseal particular documents.

*Id.* at 1312.  In other words, under the public's presumptive right to open records, the court must

determine "whether there is good cause to deny the public the right to access the document."

*FTC*, 713 F.3d at 62.

Relevant factors to consider include "whether the records are sought for such illegitimate

purposes as to promote public scandal or gain unfair commercial advantage, whether access is

likely to promote public understanding of historically significant events, and whether the press

has already been permitted substantial access to the contents of the records."  *Newman*, 696 F.2d

at 803.  The Eleventh Circuit has also held that, where a party filed a document only after the

court entered a stipulated protective order, the court should consider whether the party seeking to

keep a document sealed "has exhibited behavior consistent with its claim of reliance" on the

protective order.  *FTC*, 713 F.3d at 68; *Chi. Tribune Co.*, 263 F.3d at 1315 n.15.

The first factor weighs in favor of the Intervenors.  The lethal injection protocol and

related records clearly concern a matter of great public concern, *i.e.*, how Alabama carries out its

executions.  *See Newman*, 696 F.2d at 803.  Capital punishment is a hotly contested issue that

involves an irrevocable punishment for prisoners convicted of terrible crimes.  The public has a

great interest in understanding how the State carries out its punishment. The fact that the death penalty may be a hotly contested issue does not lessen the public's presumptive right of access to court documents—to the contrary, it increases that presumptive right of access.

The second factor the court must consider is whether access is likely to promote understanding of a historically significant event. *Newman*, 696 F.2d at 803. The Intervenors contend this factor weighs in favor of unsealing the records, and Defendants retort that it does not, because the press has already reported on the night of Mr. Hamm's aborted execution. (Doc. 108 at 28; Doc. 119 at 34–35). Again, this factor weighs in favor of unsealing the documents because, even though Mr. Hamm's attorney has made public statements about Mr. Hamm's account of what happened that night, access to the lethal injection protocol may help the public to understand the context of the State's efforts to execute him. It may also help the public to understand how the same scenario might be repeated or avoided under the protocol as it currently stands.

The third factor is whether the press already has substantial access to the content of the protocol. The lethal injection protocol covers a lot of information about the days, hours, and minutes leading up to an execution; the execution itself; and what happens after an execution. Some of the information about the execution itself is already public because this court referenced in broad terms aspects of the protocol in its memorandum opinion about Defendants' motion for summary judgment. (Doc. 30 at 7–8). But, in an attempt to avoid sealing or redacting the memorandum opinion, the court kept its summary of the protocol deliberately vague, highlighting what the protocol does *not* contain instead of what it *does* provide.

Arguably, "substantial access already has been accorded the press and the public." *Nixon*, 435 U.S. at 599 n.11. In *Nixon*, the Supreme Court held that "[t]he presence of an

alternative means of public access" weighs in favor of keeping the records sealed. *Id.* at 606.

But in *Nixon*, the alternative means of public access was a statute that provided for the

preservation and eventual release of the contested records in their original form. *Id.* at 603.

In this case, Defendants will keep the lethal injection protocol secret from the public

unless the court unseals it. And the court's vague summary of portions of the lethal injection

protocol and its gaps cannot truly substitute for the document itself. The court concludes that this

factor weighs in favor of unsealing the documents.

The fourth factor is whether the Intervenors seek the sealed records for an improper

purpose. Defendants contend that "the media attempts to gin up public scandal" about the death

penalty. (Doc. 119 at 32). They point to the participation of several Intervenors in an anti-death

penalty blog. Even if that is true, the Intervenors' potential anti-capital punishment bias is not

the type of "scandal" the Supreme Court referred to when it suggested that courts consider the

purpose for which someone seeks to unseal records. In *Nixon*, the Supreme Court wrote:

> Every court has supervisory power over its own records and files, and access has
> been denied where court files might have become a vehicle for improper
> purposes. For example, the common-law right of inspection has bowed before the
> power of a court to insure that its records are not used to gratify private spite or
> promote public scandal through the publication of the painful and sometimes
> disgusting details of a divorce case. Similarly, courts have refused to permit their
> files to serve as reservoirs of libelous statements for press consumption.

*Nixon*, 435 U.S. at 598 (quotation marks and citations omitted).

The Intervenors certainly intend to publish the content of Alabama's lethal injection

protocol. But Defendants have presented nothing other than an accusation that the Intervenors

have an improper purpose in doing so. Public *discussion* is not the same as public *scandal*. The

public needs to know how the State administers its laws; without such knowledge, the public

cannot form an educated opinion on this very important topic. And the fact that the Intervenors

may take a position about the death penalty does not make their intent to publish factual matter about how Alabama conducts its executions "scandalous."  This factor weighs in favor of unsealing the records.

The fifth factor to consider is whether Defendants have "exhibited behavior consistent with" reliance on the Agreed Confidentiality Order.  *FTC*, 713 F.3d at 68.  Defendants have always sought to keep the lethal injection protocol confidential.  Indeed, Defendants refused to disclose the lethal injection protocol even to Mr. Hamm or his counsel until the court advised the parties that it would need to review the protocol to rule on the pending motions.  This factor weighs in favor of keeping the records sealed.  But the fact that Defendants zealously guard information about a matter of great public concern does not tip the scales against disclosure.  The court concludes that the considerations in favor of unsealing the records greatly outweigh Defendants' interest in maintaining secrecy.

The final factor to consider is Defendants' contention that the protocol contains sensitive security information and information that could lead to the identities of people involved in executions.  (Doc. 119-1 at 2–3).  This factor certainly weighs in favor of keeping *parts* of the lethal injection protocol sealed, but it does not affect the analysis of whether to unseal the other parts of the protocol.  Those portions can easily be redacted—as they were before Defendants provided the protocol to Mr. Hamm's counsel.

After weighing all of the factors, the court concludes that the public's common law right of access mandates the release of the lethal injection protocol and related court records.  But the court will *not* unseal the lethal injection protocol in full.  Any information that could be used to track the locations of personnel before, during, and after the execution, or that could be used to

identify the people involved in the execution, will be redacted.  The court will consult with Defendants to determine which parts need to be redacted in light of the court's order.

## III.    CONCLUSION

The court WILL DENY Defendants' motion to reconsider the court's order granting the Intervenors' motion to intervene.  The court WILL GRANT the Intervenors' motion to unseal the lethal injection protocol and related court records.  The court will consult with Defendants to redact the parts of the lethal injection protocol that relate to security measures and the identities of people involved in executions.

**DONE** and **ORDERED** this 30th day of May, 2018.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE